RALPH E. PRIME et al., Respondents, v. THE CITY OF
YONKERS, Appellant.

1. MUNICIPAL CORPORATIONS — YONKERS (CITY OF) — CITY NOT LIA-
BLE FOR ACT OF BOARD OF HEALTH IN REMOVING DAM WHEREBY THE
FLOW OF A STREAM WAS CHANGED.   The board of health of a municipal
corporation is not the agent thereof in the abatement of a public nuisance,
and where the board of health of a city removed a dam across a stream
within the city limits in order to abate a nuisance caused by an accumula-
tion of filth and refuse in a pond formed by the dam, the city is not liable
for damages resulting from the destruction of the dam whereby the
accelerated current of the stream, deflected by obstructions in the bed
thereof, was directed with increased force and velocity against the founda-
tions of buildings which projected into that part of the stream which had
been within the limits of the pond before the removal of the dam.

2. SAME — WHEN CITY NOT LIABLE FOR DAMAGES CAUSED BY
OBSTRUCTIONS IN BED OF STREAM RESULTING FROM CHANGE THEREIN
AFTER REMOVAL OF DAM.   The fact that the authorities of the city, act-
ing under the provisions of its charter and more than twenty years before
the destruction of the dam by the board of health, had reconstructed a
causeway, which formed part of a street, over the pond formed by the
dam, and in such work had left an old abutment in the bed of the stream
which, after the removal of the dam, deflected the accelerated current of
the stream against the foundations of plaintiffs' buildings, does not ren-
der the city liable for the damages caused thereby, where there is no
evidence of negligence on the part of the city and, at the time the cause-
way was reconstructed, the abutment was taken down to a point which
was below the bottom of the stream as it then existed.   The change in
the bed of the stream resulted from the removal of the dam by the board
of health, for whose act the city is not responsible, and it cannot be held
as a matter of law that the city was bound to know that . the old abut-
ment was causing injuries to the plaintiffs' buildings where the plaintiffs
themselves did not·know it until several years after the dam was removed
and neither then nor later made any complaint thereof to the city.

3. SAME — SURFACE WATERS — WHEN CITY NOT LIABLE FOR
INCREASED DISCHARGE THEREOF INTO STREAM, RESULTING FROM THE
GRADING AND PAVING OF STREETS.   A municipality is not under obliga-
tion to provide a system of sewerage sufficient to carry off surface water;
and while it may not by means of sewers discharge sewage, or by con-
structing streets and gutters collect in a body surface water which would
naturally flow in another direction and discharge it upon private prop-
erty, it is not liable for damage caused by the discharge of surface water
which is the result solely of grading streets and highways in pursuance

of legislative authority. Where, therefore, a city graded, paved and asphalted certain streets, and in consequence thereof the surface water accumulated, during violent storms, more rapidly than if the land had remained in its natural condition, so that, the sewers could not carry it away and the surplus was discharged, by means of gutter openings, into a stream within its limits, the city is not liable for damages caused by the accelerated flow of the stream resulting from the water discharged therein in excess of the natural flow under natural conditions.

*Prime* v. *City of Yonkers*, 116 App. Div. 699, reversed.

(Argued April 9, 1908; decided April 24, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 16, 1907, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John F. Brennan* and *Thomas F. Curran* for appellant. Defendant is not liable to plaintiffs by reason of the laying out and opening of Warburton avenue over the Old Mill road in 1860. (*Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 23 N. Y. 48; *Uppington* v. *City of New York*, 165 N. Y. 222; *Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 270; *Hammond* v. *Zehner*, 21 N. Y. 117; *N. Y. R. Co.* v. *Rothery*, 132 N. Y. 293.) Defendant is under no liability to plaintiffs by reason of the rebuilding of the Warburton avenue bridges in 1878. (*Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 23 N. Y. 42; *Uppington* v. *City of New York*, 165 N. Y. 222; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584; *Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 276; *Corning* v. *T. I. & N. Factory*, 40 N.Y. 201; *N. Y. R. Co.* v. *Rothery*, 132 N.Y. 293; *Ormsbee* v. *V. T. C. M. Co.*, 56 N. Y. 623; *Haight* v. *Price*, 21 N. Y. 241; *Campbell* v. *Beaman*, 63 N. Y. 568; *Galway* v. *M. E. Ry. Co.*, 128 N. Y. 132.) Defendant is not liable for the work done by the board of health of the city of Yonkers, in tearing down and removing the dams on the Nepperhan river in 1892. (2 Dillon on Mun. Corp. § 772; *Bamber* v. *City of Rochester*, 26 Hun, 587; 63 How. Pr. 103; 97

N. Y. 625; *McKay* v. *City of Buffalo*, 9 Hun, 401; 72 N. Y. 619; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Ham* v. *Mayor, etc.*, 70 N. Y. 459; *Tone* v. *Mayor, etc.*, 70 N. Y. 157; *Lefrois* v. *County of Monroe,* 162 N. Y. 563; *Hall* v. *Town of Oyster Bay*, 61 App. Div. 510.) No liability attaches to the city of Yonkers by reason of the construction and maintenance of its drainage system in the Nepperhan valley. (*Waffle* v. *N. Y. C. & H. R. R. Co.*, 53 N. Y. 11; *McCormick* v. *Horan*, 81 N. Y. 86.)

*Henry Bacon* and *Ralph Earl Prime, Jr.*, for respondents. The city of Yonkers, as the successor of the village of Yonkers, has clearly violated the rights of the owners of the property in suit. (*O'Donnell* v. *Syracuse*, 102 App. Div. 80; *Brewster* v. *Rogers Co.*, 169 N. Y. 73; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Byrnes* v. *City of Cohoes*, 67 N. Y. 205; *Jutte* v. *Hughes*, 67 N. Y. 268; *R. W. L. Co.* v. *City of Rochester*, 3 N. Y. 463; *Moody* v. *Vil. of Saratoga Springs*, 17 App. Div. 207; *Carll* v. *Vil. of Northport*, 11 App. Div. 120; *Bedell* v. *Vil. of Seacliff*, 18 App. Div. 261.) Under the circumstances in this case, the board of health was a mere agent of the city of Yonkers, and what it did it did as such agent, and the city is responsible for its acts under the strictest application of the doctrine of *respondeat superior.* (*Ocorr & Rugg Co.* v. *City of Little Falls*, 77 App. Div. 592; 178 N. Y. 622.)

CULLEN, Ch. J.   The Nepperhan river flows through the city of Yonkers from east to west discharging into the Hudson river. In 1860 there had been several dams constructed along the course of the river, the water being utilized for mill purposes. About this time the village of Yonkers laid out and constructed Warburton avenue across a pond formed by one of these dams. The street was a solid causeway with two openings of twenty feet each to permit the flow of the water. In 1878 the city of Yonkers (the successor of the village)

reconstructed Warburton avenue across the pond with a single opening of forty feet for the flow of the stream. The location of this opening was such that one of the abutments of the former twenty-foot opening lay askew across a part of the new forty-foot opening. This abutment was taken down to the bottom of the pond and the stone removed. The movement of the water was then sluggish and no complaint is made that the opening so left in Warburton avenue was not adequate and sufficient to permit the proper flow of the stream at that time. In 1892, however, the pond had become a nuisance from the accumulation of filth and refuse therein and the board of health of the city of Yonkers removed the dam which lay below Warburton avenue. (*People ex rel. Copcutt* v. *Board of Health*, 140 N. Y. 1.) The removal of the dam effected a change in the flow of the water. After the dam was removed the stream returned to its natural size, and its current, especially at times of storm, was much accelerated. As the trial court has found, in 1878 the bottom of the pond, by reason of the deposit therein of sediment, was above the natural bed of the stream. After 1892 the effect of the accelerated current of the stream was first to wash away such sediment and thereafter to cut into the bed of the stream itself. As the bed of the stream was lowered the remains of the old abutment became exposed to the water, and on account of its position in the forty-foot waterway it acted as a funnel, causing the water to flow with increased velocity and force in the stream below the avenue. In 1890, the plaintiffs or their predecessors in title erected certain buildings abutting on Warburton avenue at the intersection of the river, with stone foundations projecting into the river itself, or pond as it was at that time. It is alleged and the trial court has found that by reason of the obstruction in the waterway caused by the old abutment the water was thereupon directed with unnatural and great force against the foundation of the plaintiffs' buildings, for the injury to which it awarded them the sum of $9,000. The judgment has been unanimously affirmed by the Appellate Division. The affirm-

ance below being unanimous, the sole question presented to us is whether the findings of fact support the conclusions of law.

In their complaint the plaintiffs charge other grounds of liability against defendant than that on which the trial court based its decision. They charge that the reconstruction of the street in 1878 was negligent and improper and that the waterway was insufficient and inadequate; that the removal of the lower dam by the board of health was wanton, unlawful and negligently and carelessly done and sought to charge the town with liability for the act of the board of health. They also charged that the defendant by constructing, paving and flagging streets and avenues on the lands adjacent to the river, had diverted and cast into the river greater quantities of surface water, particularly at the time of storms, thereby greatly accelerating the flow of water therein. The trial court refused to predicate liability on the grounds just mentioned; nevertheless the plaintiffs still seek to support the judgment before us on those grounds. They may be disposed of, however, very briefly. The board of health was not the agent of the city in the destruction of the dam for the purpose of abating a nuisance, and the city was not liable for its acts. In *Bamber* v. *City of Rochester* (26 Hun, 587) the city was held not to be liable for a quantity of rags destroyed by the board of health as infectious and dangerous to the public health. Judge HAIGHT, then in the Supreme Court, said: "The duties devolving upon the board of health do not relate to the exercise of corporate powers, neither are their duties for the benefit of the corporation in its local or special interest. Their duties relate to the preservation of the health of the public; the individuals residing in the city may be benefited by the faithful discharge of the duties of such officers, so may the public at large. The duties of such officers are, therefore, public in their nature, and they should be regarded as the servants and agents of the public, instead of the corporation." The judgment was affirmed in this court on that opinion. (See, also, *Maxmilian* v. *Mayor, etc., of N. Y.*, 62 N. Y. 160.) As to the next ground of recovery the court refused

the finding requested by the plaintiffs that the defendant by grading, paving and asphalting of streets within the watershed of the river, had conducted all the surface water either by gutter openings or sewer openings in unusual quantities and with increased velocity into the Nepperhan river; but it did find that at the time of a heavy storm, with a rainfall exceeding one inch an hour the sewers were insufficient to carry off the surface water and that surplus water was discharged in large and unusual quantities by means of the gutter openings in the streets into the river; that at such times the water discharged into the river was in excess of the natural flow under natural conditions. It was not found by the trial court, nor does it appear by the evidence, that any sewer constructed by the defendant discharges into the Nepperhan river. All that the court found is that the sewers were insufficient to carry off the surface water in time of violent storm, and that the improvement of that part of the city and the grading and flagging of the streets in time of storm discharged water more rapidly into the river than would have occurred had the land been in its natural condition. But the city was not under obligation to provide a system of sewerage sufficient to carry off the surface water. (*Mills* v. *City of Brooklyn*, 32 N. Y. 489.) And while a municipality may not by means of sewers discharge sewage, or by constructing streets and gutters collect in a body surface water which would naturally flow in another direction and discharge it upon private property (*Byrnes* v. *City of Cohoes*, 67 N. Y. 204; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136), it is not liable for damage caused by the discharge of surface water which is the result solely of grading streets and highways in pursuance of legislative authority. (*Lynch* v. *Mayor, etc., of N. Y.*, 76 N. Y. 60; *Anchor Brewing Co.* v. *Dobbs Ferry*, 84 Hun, 274; affirmed on opinion below, 156 N. Y. 695.)

We are now brought to the consideration of the grounds upon which the trial court based its judgment; that is to say, that the city, in reconstructing Warburton avenue, left the

old abutment in the waterway, and that abutment caused the damage to the plaintiffs. We think that these two facts standing alone are insufficient to render the defendant liable. The reconstruction of Warburton avenue was found by the trial court to have been done under the provisions of their charter, and it having been constructed for more than twenty years prior to the commencement of this action, the presumption is that its maintenance was lawful. In fact, I do not see that the authority of the city or village to carry Warburton avenue across the stream is or can be challenged by the plaintiffs. This being the case, the defendant could be charged with liability for damages occasioned by its construction only by reason of negligence. It must be borne in mind that the injury suffered by the plaintiffs was strictly consequential. The leading case on this subject is *Bellinger* v. *N. Y. C. R. R. Co.* (23 N. Y. 42). In that case the defendant had constructed its railroad across West Canada creek. The plaintiff claimed that the construction of the defendant's railroad had obstructed the creek and caused a flood upon his land. It was held that the defendant could be charged only with negligence in its construction. Judge Denio there said : " If one chooses of his own authority, to interfere with the watercourse, even upon his own land, he, as a general rule, does it at his peril, as respects other riparian owners above or below. But the rule is different where one acts under the authority of law. There he has the sanction of the state for what he does, and, unless he commits a fault in the manner of doing it, he is completely justified." There is no finding of fact on the vital element of the case, the negligence of the defendant. It is conceded that the defendant removed the wall to a point below the bottom of the river. It is not claimed that as long as the pond remained the wall in any way affected the flow of water. It was the act of a third party that rendered a structure that constituted no obstruction to the stream at the time of the reconstruction of Warburton avenue, in 1878, subsequently a source of injury to the plaintiffs. For the act of the third

party the defendant was not responsible. It is true that the duty resting upon the defendant to provide reasonable waterways for the flow of the stream was continuous, and it might very well be that a waterway which was adequate and sufficient at the time it was constructed would, by reason of the changed conditions, become inadequate. Under such circumstances the burden would rest upon the city of changing the waterway when the necessity therefor occurred. But the duty resting on the city was not absolute, but to exercise reasonable care, and again there is no finding that the city was guilty of negligence in maintaining the waterway in an improper manner after the destruction of the dam below. One of the plaintiffs testified that he was not aware that the water was injuring the foundations until 1896, and it does not appear that he ever made any request to the city to remove the old abutment until the commencement of this action. After the commencement of the action the defendant not only removed the old abutment, but built a wall preventing the flow of water against the foundations of the plaintiffs' building. It cannot be said as a matter of law that in 1878 the defendant was bound to foresee the probability of the dam being removed and the sediment in the pond being carried away, nor can it be said as a matter of law that after the destruction of the dam the defendant was bound to know that the old abutment was causing injuries to the plaintiffs' property, when the latter were themselves ignorant of that fact until 1896, and neither then nor later made any complaint thereof to the defendant. These were questions of fact for the determination of the trial court, and it has failed to find that in either respect the defendant was negligent.

The judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; VANN, J., not voting.

Judgment reversed, etc.