that such proceeding could be maintained, and that the determination bound only the owners along the streets included, and that independent application could be made for the other streets. The logic of this decision is that the commissioners and court do not consent for the aggregate owners on the route, but for the owners on each street. The confirmed report of the commissioners that the road should be built was in substitution of the consent of the property owners on the streets in question. Unless the company, in other respects enabled, could then enter on the streets and build the railway, of what avail was the proceeding? Having obtained the order, it was not necessary as to the included streets to await the consent of the owners on other streets. They could be heard on an application as to other streets, and the court irrespective of the earlier determination could determine that the railway should not be built on the streets where their property was, but could not thereby reverse its former decision that it should be built on the streets first presented. If owners on the whole route must consent and the commissioners consent for them, how could they on different occasions make determination for those on one street and those on another—determination may be that the road should be built on some, may be that it should not be built on others? It should be noted that this proceeding does not involve the construction or operation of the railway but is to determine compensation for crossing defendant's railway and the manner of doing. Whether it has proper authority from the Public Service Commissioners to operate a portion of its line before completing and operating along its entire route is not involved. So far as the right to build or to operate has been discussed, it has been in furtherance of the discussion of what consent of the property owners is necessary.

The orders and judgment should be affirmed, with costs. All concur.

———

(159 App. Div. 517.)

### PENNOCK v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department.    December 5, 1913.)

WATERS AND WATER COURSES (§ 172*)—CONSTRUCTION OF RAILROAD—CULVERTS —INJURIES—NEGLIGENCE.

A railroad company authorized to construct its road over a stream running through its right of way is not liable to an adjoining owner for injuries to his land by the overflow of the stream caused by the collapsing of a culvert embankment in the course of construction, if the work was done wholly on the company's property and the collapsing of the embankment was not a necessary result of the work, unless it was caused by the company's negligence; the law of nuisance not being involved.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 233-236; Dec. Dig. § 172.*]

Appeal from Trial Term, Dutchess County.

Action by Meda B. H. Pennock against the Central New England Railway Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Samuel H. Brown, of Poughkeepsie (F. B. Lown, of Poughkeepsie, on the brief), for appellant.

Morschauser & Mack, of Poughkeepsie, for respondent.

STAPLETON, J.   The appeal is from a judgment for $9,236.50, entered upon a verdict in favor of the plaintiff, and from an order denying defendant's motion to set aside the verdict and for a new trial.

The plaintiff is the owner of a brickyard at Poughkeepsie. The defendant, a railroad corporation, acquired by a condemnation proceeding a right of way through what is practically the center of plaintiff's property. The award was satisfactory to the plaintiff and accepted by her, and the order of confirmation was duly entered. The strip acquired, 150 feet in width, consisted of about six acres. Upon this strip, lawfully authorized by the state so to do, the defendant proceeded to erect a "fill" or embankment, over which, when completed, it was designed to lay railroad tracks. The embankment was 35 or 40 feet in height, and 3,800 feet in length. Through the plaintiff's and the defendant's property, in a direction intersecting the proposed embankment, flowed Casperkill, a natural running stream from 1 to 3 feet in depth and varying in width from 2 to 10 feet. It was arranged and stipulated in the condemnation proceeding that in the taking of the land by the defendant was included no right to interfere with this stream. To provide for the free passage of the stream through the embankment, the defendant built a culvert in dimension 6 feet 4 inches wide and 5 feet high, giving an opening equivalent in diameter to a 5-foot circle. The foundation for the culvert was laid upon hard clay, 7 feet or more beneath the surface; the excavation therefor being 13 feet wide and 121 feet in length. The culvert itself was strongly built of concrete. Its top or cap was a concrete slab 18 inches thick, reinforced with 70-pound rails laid at intervals of less than a foot apart. Upon this slab were piled dirt and rocks to a height estimated variously as 28 and 35 feet. At this elevation lay the bed of the railroad. When the embankment was about completed, the culvert collapsed, the whole thing buckled up, and when it sank the bank sagged with it. The creek, thus blocked, backed up and flooded the plaintiff's land, damaging her real and personal property and interfering with her business of manufacturing brick. The extent of the damage was vigorously disputed.

The complaint was founded upon the theory of negligence, and much evidence was given in proof and disproof of that ground of liability on the part of the defendant in selecting the foundation or bed upon which the culvert eventually rested. The immediate foundation was a very dry, compact, yellow clay, underneath which was a stratum of blue clay. It was sought by the plaintiff, with some success, to show that clay was a bad foundation where it was likely that water would penetrate. On the other hand, the defendant submitted evidence to the effect that careful boring to a depth of 20 feet had been made preparatory to selecting the foundation, that 20 feet of "reasonably dry

clay" made a good foundation, and that a good foundation could be put on even wet clay.

For a number of years the defendant had run its railroad through another embankment on this property, close to and almost parallel with the new embankment. The old embankment had been settling year by year. From one of the defendant's expert witnesses the plaintiff elicited the admission that such a condition would have made him suspicious and he "would dig deeper." The defendant's contention was that the sinking was due to some unknown action or cause below the clay, as a quicksand or a muck pocket.

In the record appears this colloquy:

"Mr. Lown: I think Mr. Morschauser, in his complaint, has seen fit to allege that this was built negligently. * * * The Court: I think I will submit the case to the jury on a different theory. * * * I think it is a question of a private nuisance."

In its charge to the jury the court said:

"If the defendant, the railroad company, in the course of its work, closed up this natural water course by any obstruction or permitted it to become closed, if, in other words, the culvert, which it constructed upon this property collapsed and fell into this stream and closed it up, and thereby caused the waters to back up over the plaintiff's property, the defendant in that event is liable to the plaintiff for her actual money damages. If, in other words, the culvert gave way and collapsed and fell into and filled up this passageway, this water course that had been provided for this stream, and thereby overflowed the plaintiff's premises, and caused her damage, the railroad company is liable to the plaintiff, no matter whether the defendant's work was negligently done or not, no matter how much care was used or skill exercised in the construction of this culvert. If it did give way and fill up this water course and obstruct the same and cause the water to overflow the plaintiff's property, the railroad company is liable."

Again, in its opinion on the motion for a new trial, the court said:

"Since the verdict was rendered by the jury, I have carefully considered the briefs submitted by the defendant's counsel in support of the motion to set aside the verdict, and have examined all of the authorities cited; but I am not persuaded that I erred in charging the jury as I did. I am convinced that the stopping of the natural flow of the stream by the defendant, thereby flooding the plaintiff's brickyard, makes the defendant liable to the plaintiff for his actual damage, regardless of the question of negligence. If that is not the law, I think it ought to be."

Efficient exceptions to these rulings were interposed, and, as has been stated, an appeal is taken from the order denying the motion to set aside the verdict and for a new trial.

Liability has been imposed upon the defendant for consequences irrespective of any considerations of care and skill, upon the theory that the rightful possession of the plaintiff was wrongfully disturbed and that direct, necessary, and immediate injury was caused to her property. The defendant contends that error was thus committed, as the correct rule is that, if one do a lawful act on his own premises, he cannot be held liable for consequential injuries that may result unless it was so done as to constitute actionable negligence.

The law of nuisance is not involved. Uline v. N. Y. C. & H. R. R. R. Co., 101 N. Y. 98, 107, 4 N. E. 536, 54 Am. Rep. 661.

144 N.Y.S.—34

The distinction in the application of the rules of liability is clearly pointed out in the leading cases.

In Hay v. Cohoes Co., 2 N. Y. 159, 51 Am. Dec. 279, a canal company was authorized to dig a canal. In so doing it was necessary to blast rocks with gunpowder, and fragments of rocks were thrown against and injured plaintiff's adjoining lands and dwelling. The defendants were held liable for the injury, although no negligence or want of skill in executing the work was alleged or proved. A long line of cases, including St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258, Noonan v. City of Albany, 79 N. Y. 470, 35 Am. Rep. 540, and Huffmire v. City of Brooklyn, 162 N. Y. 584, 57 N. E. 176, 48 L. R. A. 421, in which the facts disclosed that there was a physical invasion of the lands damaged, or that the injury was the direct, immediate, and necessary result of the act of. the wrongdoer, followed the principle announced in Hay v. Cohoes Co., supra.

In Bellinger v. New York Central Railroad, 23 N. Y. 42, a railroad company was authorized to build a railroad across a creek adjoining plaintiff's land. It bridged the creek. On occasions of freshets the land of the plaintiff was covered with ice and strewn with flood wood and rubbish, his soil was washed off, and his fences were carried away. These effects were attributed by witnesses to the construction of the bridge and the embankment. It was held that the property injured was not thereby taken, as the railroad company was acting with lawful authority under the sanction of the state; that the damages were consequential; and that unless the railroad company committed or omitted some act which constituted actionable negligence there could be no recovery. The rule there announced has been followed in Atwater v. Trustees of the Village of Canandaigua, 124 N. Y. 602, 27 N. E. 385, Moyer v. N. Y. C. & H. R. R. R. Co., 88 N. Y. 351, and Gordon v. Ellenville & Kingston R. R. Co., 195 N. Y. 137, 88 N. E. 14.

The law is that where a railroad company is authorized to construct its road over a given route, which involves the necessity of crossing a stream running through its own property, and its operations are confined to its own land, and there is no trespass and nothing is disclosed by which it is proved that the injurious result must necessarily have followed the prosecution of the work itself, the inundation of the plaintiff's land by the blocking up of the stream, caused by a collapse of the work in the course of construction, presents a case where the damages are consequential and are not recoverable unless the injury was caused by misconduct, negligence, or unskillfulness. Gordon v. Ellenville & Kingston R. R. Co., supra; Prime v. City of Yonkers, 192 N. Y. 105, 84 N. E. 571; Booth v. R., W. & O. T. R. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552.

This case was submitted to the jury upon the assumption that the defendant was absolutely liable, and the judgment entered upon the verdict against the defendant must be reversed.

Judgment and order reversed, and a new trial granted; costs to abide the event. All concur.