Eva M. Wright, Individually and as Administratrix C. T. A. of Seymour G. Camp Estate, Margaret Rowe and Grace Stenson, Plaintiffs, *v.* City of Oneonta, Defendant.

Supreme Court, Special Term, Otsego County, December 28, 1937.

*George L. Bockes*, for the plaintiffs.

*Julian B. Jackson* [*Donald H. Grant* of counsel], for the defendant.

McNAUGHT, J.  Oneonta creek, a tributary of the Susquehanna river, passes through the city of Oneonta.  The watershed comprises about eight and one-half square miles.  The stream is the source of water supply for the city.  The Oneonta Water Works Company was organized about the year 1884.  It acquired from the riparian owners the right to dam said stream for the purpose of impounding the waters thereof and " to stop the natural flow of said stream, a part, the whole, or a portion of the year as the case may be."  The Oneonta Water Works Company, for the purpose of supplying water to the then village of Oneonta, constructed a dam upon said stream about four miles from the present city limits.  The waters so impounded overflow into the channel of the stream to a lower or distributing reservoir, and so into filtration plants.  The overflow passes over a fifty-foot spillway and down the stream to the Susquehanna river.  The distance from the upper reservoir to the junction with the river is five miles.  In the year 1908 the village of Oneonta was duly incorporated as a city of the third class by chapter 454 of the Laws of 1908.  Various amendatory acts have been passed which have no consequence here.  About the year 1923 the defendant city, under the provisions of the will of George I. Wilber, a distinguished citizen of the city, became the owner of the property and franchises of the Oneonta Water Works Company, and has since continued to operate the distribution system, furnishing water to the inhabitants of the city.

The plaintiff's predecessor in title, on or about July 5, 1933, acquired certain premises located adjacent to Fair street in such city, and a short distance from the Oneonta creek as it flowed to the Susquehanna river.  On or about July 8, 1935, the Oneonta creek rose to such a height that it caused flood conditions, and the waters came over and upon the premises of the plaintiffs, carrying away a four-car garage, eroding the lot so as to require a large quantity of filling to raise it to its previous condition, and by action of the flood waters damaged the house upon the premises, causing it to settle, the walls to crack, and various other incidental damages.

The plaintiffs contend that the defendant city, having succeeded to the rights and liabilities of the Oneonta Water Works Company, assumed control of Oneonta creek and was obligated to maintain it within its banks in such a manner as not to injure adjacent property. It is also claimed that the city, through its officials, has altered and changed the channel of the stream, and in so doing has failed to protect the rights and property of lower riparian owners.

It appears from the testimony, and is fairly established, that a portion of the channel of the creek has been dredged; that in 1927 some 1,200 feet was dredged, so that the waters of the creek would run into a swimming pool in Wilber Park (a public playground of the city), and the waters flowing from the pool by a new channel would pass back into the original channel of the creek; that the city in the year 1928, through its board of park commissioners who exercised authority over the change of the waters into the pool, found it necessary to acquire land from an adjacent riparian owner, and by formal resolution determined it was advisable to straighten the creek in Wilber Park, and authorized the payment of $100 to one Oliver for land which would be used in making such improvement. It is not contended that the city authorities have in any manner changed or interfered with the natural course or channel of the stream after leaving the bounds of Wilber Park as it passes through the city to its junction with the river.

The premises of the plaintiffs are situated one and three-quarters miles from the dam at the lower reservoir maintained by the defendant. Six bridges are maintained by the city over the stream as it passes various streets and public highways within the city. Several of the bridges are new, having been constructed or reconstructed within the last few years. The abutments are in the same locations, and are of the same sizes, as they have been since the year 1912.

It appears from the Weather Bureau records that there was a precipitation of rainfall on July 7, 1935, of 1.47 inches; July 8th, 5.24 inches; that during the forty-eight hours July 7th and 8th, the total precipitation recorded was 6.71, while the maximum precipitation shown by the records from 1895 for any forty-eight-hour period was 5.69 inches, and the maximum precipitation for any twenty-four-hour period was 5.09 inches. The records also show that the total precipitation for the month of July, 1935, was 10.61 inches, the maximum in any month since the Weather Bureau records were first kept at Oneonta, commencing January, 1895.

On July 8 and 9, 1935, the Oneonta creek reached a turbulent flood stage. Trees were uprooted and carried downstream together

with debris of various kinds. Some obstructions were formed at various points, which diverted the current of the stream. The condition thus created caused material damage, and particularly damaged the plaintiffs.

It was conceded that the conditions creating the nuisance alleged by the plaintiffs had, since the action was brought, been abated by the completion of certain improvements under the governmental agency known as W. P. A., and that plaintiffs made no claim at this time that a nuisance existed which plaintiffs were entitled to have abated.

The questions for determination, therefore, are, *first*, are the plaintiffs entitled to recover damages against the defendant city; *second*, if so, the amount of such damages.

It appears that a considerable portion of the watershed has been reforested, which plaintiffs contend had a tendency to augment the flow of water in the stream.

The defendant, a municipal corporation, has no greater right than an individual or than its predecessor in title, Oneonta Water Works Company. It is not entitled to change the channel of the stream in such a manner as to deprive lower riparian owners of the natural flow of the stream as it passes from the property of the city, nor to so increase and augment the flow as to damage lower riparian owners. (*Noonan* v. *City of Albany*, 79 N. Y. 470.)

Under the rights acquired from the Oneonta Water Works Company from lower riparian owners upon Oneonta creek, the company was granted the right to dam the stream and erect its reservoirs, and to let the water off at such time or times as the company might wish. Title to the land over which the stream passes was not conveyed. The right that was vested in the water company was to impound, detain and distribute waters, and inferentially, to cause the overflow to continue in the channel and upon the course of Oneonta creek.

The owner of land through which a stream passes has the unquestioned and undoubted right to use it and to divert it upon his lands, provided it is returned to the normal and natural channel as it passes from his lands through the lands of lower riparian owners.

Whatever has been done in reference to the channel of Oneonta creek by the defendant city, has been done upon its own property. There is no evidence which would justify a finding that the course of the stream below the property of the city has been changed, or that any alterations made by the city damaged riparian owners, excepting in changing the course of the stream into a swimming pool in Wilber Park and conducting the overflow back to the original

channel it was necessary to acquire the lands of one Oliver, which the city did.

The plaintiffs were disastrously injured and damaged by the flood waters of July, 1935. It is a well-known fact that the conditions existing along Oneonta creek, and past and upon the premises of the plaintiffs, existed in many places in this immediate section of the State of New York; that many individuals suffered great damage; that many bridges were washed away and many highways partially destroyed.

The liability of the defendant city, if any, must be predicated upon the theory of its negligence in the performance of duties incumbent upon it with respect to the maintenance of the channel of the creek. No duty ordinarily rests upon a municipality, through whose boundaries a river or stream passes in whole or in part, to keep it in safe condition or free from obstructions not of its own causing. (*O'Donnell* v. *City of Syracuse*, 184 N. Y. 1, 11.) Neither did such duty rest upon the defendant city under any liability assumed by the Oneonta Water Works Company.

Where the board of health of a city removed a dam in order to abate a nuisance caused by an accumulation of refuse, the city was not liable for damages resulting from the destruction of the dam whereby the accelerated current of the stream deflected by obstructions was directed with increased force and velocity against the foundations of buildings, and the fact that the authorities of the city many years prior to the destruction of the dam had reconstructed a causeway which formed part of a street over the pond formed by the dam, and in such work had left an old abutment in the bed of the stream which deflected the accelerated current against the foundations of the plaintiff's buildings, does not render the city liable for damages caused thereby, where there is no evidence of negligence on the part of the city. (*Prime* v. *City of Yonkers*, 192 N. Y. 105.)

A municipal corporation is not liable for damages because of an increase in the volume of surface water, so long as the flow of the water was not diverted from its natural course. (*Howard* v. *City of Buffalo*, 211 N. Y. 241, 262; *Fox* v. *City of New Rochelle*, 240 id. 109.)

A municipal corporation is not liable when collected surface water causes a brook to overflow its banks. (*Cashin* v. *City of New Rochelle*, 256 N. Y. 190.)

" Before a municipality can be made liable for causing an injury, it must appear that some duty, incumbent upon it to perform, has been neglected, or has been improperly discharged." (*Klein* v. *Town of Pittstown*, 241 App. Div. 202, 203.)

Municipalities are not insurers against damages caused by the entry of surface waters upon private premises, and unless failure to perform a ministerial duty is shown, the loss is *damnum absque injuria.* (*O'Donnell* v. *City of Syracuse, supra; Prime* v. *City of Yonkers, supra; Olney Canning Co.* v. *State,* 230 N. Y. 351; *Bennett* v. *Cupina,* 253 id. 436; *Dounce* v. *City of Elmira,* 237 App. Div. 379.)

" Flood waters which have not become surface waters, but which maintain their integrity as a definite though broadened course, may not, according to many well-considered decisions, be obstructed by riparian proprietors to the prejudice of their neighbors." (Citing cases.) (*Howard* v. *City of Buffalo, supra,* 258.)

In view of the principles settled by the authorities cited, it is our conclusion that liability of the defendant city to respond in damages to the plaintiffs is not established. The evidence will not warrant a finding that the defendant has interfered with, deflected, changed or increased the hazards from the stream in question. It was not obligated, either as a municipal corporation or as a successor to the rights and liabilities of the Oneonta Water Works Company, to protect, by dikes or otherwise, property adjacent to the channel of the stream. The conditions which caused the damage to plaintiffs were unusual, extraordinary and not foreseeable. A disastrous flood was caused by the precipitation of rain, over which the defendant city had no control. It is to be regretted that the plaintiffs, as well as many others, suffered severe damages as a result of the flood of July, 1935. We cannot perceive that the defendant city was or is liable therefor.

Decision was reserved upon a motion, made at the close of all the evidence, to dismiss the complaint upon the ground that the plaintiffs had failed to establish facts sufficient to constitute a cause of action. It is our opinion the motion must be granted.

Motion to dismiss complaint granted upon the merits, with costs to be taxed by the clerk of the county of Otsego.

Submit accordingly.