In the Matter of the Application of LAWRENCE A. BURKE, Petitioner, for a Peremptory Order of Mandamus against PHILIP M. KRUG and Another, as and Constituting the Board of Elections of the County of Nassau, State of New York, Respondents.

Supreme Court, Nassau County, October 5, 1936.

*David B. Tolins*, for the petitioner.

*James L. Dowsey*, for the respondents.

*Howard G. Wilson*, for the Nassau County Commission on Govern mental Revision.

RIEGELMANN, J.   This is a motion by the petitioner, a resident of the city of Long Beach, Nassau county, for a peremptory order of mandamus requiring the board of elections of said county, in the preparation of the ballots to be used at the ensuing general election, to disregard any proposition for the submission to the voters of an alternative form of government for said county, generally referred to as the Nassau County Charter, in compliance with chapter 879 of the Laws of 1936, and to prepare such ballots and other paraphernalia in such a manner that such proposition or question shall not appear thereon.

Chapter 244 of the Laws of 1922 empowered the board of supervisors of Nassau county to appoint a commission of taxpayers in said county, not exceeding seventeen in number, to examine the different laws of the State applicable to the government of the county, towns and other municipalities and political subdivisions in such county, and to determine the advisability of changing the forms or methods of government in such county, towns or other political subdivisions; to examine the form of government of other counties or other cities within or without the State for the purpose of recommending an improvement in the government of such county and its political subdivisions, and from such examinations and investigations to determine what form of government is best suited to meet the needs of the residents of Nassau county, and to report its findings and recommendations to the board of supervisors of such county.

Pursuant to the legislative authority, the board of supervisors, on December 31, 1934, appointed a commission on governmental revision, consisting of seventeen members. The members so appointed were citizens of character and ability.

The commission immediately began to exercise its functions within the purport and scope of the enabling act. They made a careful and exhaustive survey and study of other and different permissible forms of county government with a view of suggesting an alternative form of government which should eliminate existing evils and inconveniences and in all respects be more simple, practical and logical in form and effect.

Upon completion of its research and investigations, the commission, on January 27, 1936, submitted to the board of supervisors its findings and recommendations which, in effect, were in the form of a proposed new or alternative form of government. These recommendations were accepted by the board of supervisors and embodied in a proposed legislative enactment which was introduced in and passed by both branches of the Legislature, signed by the Governor, and so became chapter 879 of the Laws of 1936.

The passage of this law, it is claimed, was pursuant to the authorization of section 26 of article 3 of the Constitution, as amended, which provides that the Legislature shall provide by law " for the organization and government of counties and shall provide by law alternative forms of government for counties except " certain counties.

The amendment further provides that no such form of government shall become operative in any such county unless and until adopted at a general election held in such county, as therein provided. The purpose for the mandamus here sought is to prevent such referendum to the people.

In my opinion, chapter 879 is a general law, and not, as claimed by petitioner, a special or local act. By section 2601 the Legislature has declared that the act provides an alternative form of government for counties, "which shall have, at the time of the adoption of such alternative form of government therein, a population of not less than three hundred thousand nor more than four hundred thousand, and not in excess of three towns; and any such county may adopt such alternative form of government as provided by the Constitution and by this act."

Any and all counties within the scope of the quoted provision may adopt any alternative form of government provided by the law. The act is general in form, and the fact that at the time of its enactment only a few or even only one county is actually included within the confines of the statutory provision does not render the act a private or local act. Thus, chapter 554 of the Laws of 1881 conferred upon the board of supervisors power: " 9. To authorize in any county containing an incorporated city of one hundred thousand inhabitants or upward, when any territory within such county and beyond the limits of such city has been mapped out into streets and avenues, in pursuance of law, the establishment of a plan for the grades of such streets and avenues, the laying out, opening, grading, construction, closing and change of line of any one or more of them."

The court held this to be a general and not a local law. (*Matter of Church*, 92 N. Y. 1, at pp. 4, 5.)

Other cases stating the same principle of law justify the conclusion that this act is in form a general law. (See *Matter of New York Elevated R. R. Co.*, 70 N. Y. 327, at p. 350; *People ex rel. New York Electric Lines Co.* v. *Squire*, 107 id. 593, at p. 601; *Matter of McAneny* v. *Board of Estimate & Apportionment of City of New York*, 232 id. 377, at pp. 392, 393.)

Contending, erroneously as I believe, that chapter 879 is a private or local bill, petitioner asserts that it violates section 16 of article 3 of the Constitution. This section provides that "No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

The title of the act under consideration reads: "An act providing an alternative form of government for certain counties and providing for the submission of the same to the electors of any such county." (Laws of 1936, chap. 879.)

Petitioner asserts in substance that an examination of the act fails to disclose any alternative form of government, that only one form of government is contained in the entire act, with the result that a title containing the word " alternative," when there is no

alternative, does not properly express the subject of the legislation and so violates the quoted statutory provision. This is equivalent to a contention that every bill so submitted to the people for approval must contain at least two different forms of government so that the people may choose one form as an alternative to the other.

There is no such constitutional or statutory requirement. Section 26 of article 3 of the Constitution provides in subdivision 2 that the Legislature " shall provide by law alternative forms of government for counties." Here, the word " form " is used in the plural with reference to the word " county," also used in the plural, but the subsequent provisions show that when the reference is to a single county the word " form " is used in the singular. Thus, the subdivision subsequently provided that " no such form of government shall become operative in any such county " and " any such form of government shall set forth the structure of the county government." Such is the purport and effect of the title to chapter 879. The title evidences an offer to the people of Nassau county of the option to adopt the new form of government in lieu of and as an alternative to the existing form of government. That such was the view also of the Legislature is evidenced in section 2601 of the act, where are found the words, " This act provides an alternative form of government," and in section 2602 are the words: " The foregoing alternative form of government shall not become operative in the county unless and until adopted." Similar language descriptive of the nature of the act is found in sections 2603 and 2604, and in section 2605 the language used is, " If the alternative form of government provided by this act is adopted in a county." It is clear that the word " alternative," as used in these provisions, means a form of government alternative to the existing form. In my opinion, there is no merit to petitioner's contention in this respect.

Another contention of petitioner is that chapter 879 violates the provisions of said section 26 of article 3 of the Constitution, which requires the Legislature to provide by law alternative forms of government for counties. The primary, if not the sole, argument in support of this view is that, although chapter 879 is entitled "An act providing an alternative form of government," it in fact gives no alternative. In the preceding consideration of petitioner's claim that the act violates the provisions of section 16 of article 3 of the Constitution, I reached the conclusion that the word " alternative " signified that the new form of government proposed by the act was an alternative to the existing form of government in any county. The contention here raised requires no further consideration. In my opinion it is without merit.

The primary contention of petitioner is that chapter 879 is unconstitutional, in that it violates section 2 of article 12 of the Constitution, often referred to as the Home Rule Amendment. This section is as follows: " The Legislature shall not pass any law relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities except on message from the Governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the Legislature."

Section 4 of the same article reads as follows: " The provisions of this article shall not be deemed to restrict the power of the Legislature to enact laws relating to matters other than the property, affairs or government of cities."

It is conceded that chapter 879 was passed in the same manner in which legislation is usually enacted, that is, by a majority vote, and not as emergency legislation upon message from the Governor by the concurrent vote of two-thirds of the members of each house of the Legislature. The substance of petitioner's contention, as I understand it, is that many of the important provisions or features of government contained in chapter 879 are special or local either in terms or effect, and since they relate to the " property, affairs or government " of cities within the county of Nassau, they are violative of the constitutional provisions quoted because not passed as emergency legislation.

In paragraph 5, subdivision (b), of the petition reference is made to eight or more separate features or provisions in chapter 879 which are asserted to be illegal for the reason above stated.

In considering the merits of this contention, it is clear that section 2 of article 12 does not prohibit the enactment in the usual manner of any laws which do not relate to the property, affairs or government of cities. The Legislature has so expressly declared in section 4. These words " property, affairs or government of cities," as used in these statutory provisions, have a far more restricted and limited significance than attaches to their use colloquially or in common speech. The Court of Appeals has said that these words since 1894 " have become words of art " and were so used in the Home Rule Amendment, known as article 12 of the Constitution. The court further held that it would be unfair to the people of the State to now change the special limited meaning given to these words in the case there cited. (*Adler* v. *Deegan*, 251 N. Y. 467, at p. 473.) It is further stated in substance in the concurring opinion of Judge POUND (251 N. Y. 480) that neither the Constitution nor the

Legislature has made any attempt to define laws relating to the property, affairs, or government of cities, " nor shall we at this time." While there is, therefore, no controlling authority specifying with legal exactness the restricted and limited significance of these words, the cases do disclose that certain specified legislation is not included within their meaning. Thus, a law in form and terms may relate apparently only to a single city, or to a limited number of cities, yet if the law was adopted for the purpose of generally conserving the interest, health and welfare of the public at large, it will not be deemed to be legislation relating to the property, affairs or government of the particular city or cities or to come within the limited significance given to these words. So matters " localized in their application to a single city " have been held to be included within the scope of the words " State affairs." Thus, the Court of Appeals has said that rapid transit in the city of New York " has been generally regarded as a State affair," and that the Rapid Transit Act, although applicable only to the city of New York, was constitutional as against the contention that it was a local city law; that such act, whether dealing with railroads of one or more cities, was not a law relating to the " property, affairs or government of cities." (*Adler* v. *Deegan*, 251 N. Y. 467, at pp. 472, 473, 482; *Admiral Realty Co.* v. *City of N. Y.*, 206 id. 110, at p. 140.)

In his concurring opinion in the *Adler Case* Judge CARDOZO wrote (251 N. Y. 467, at pp. 489, 490): " The question to be faced is this, has the State surrendered the power to enact local laws by the usual forms of legislation where subjects of State concern are directly and substantially involved, though intermingled with these, and perhaps identical with them, are concerns proper to the city? So far as judicial precedents in the courts of New York are available for guidance, they deal with the interpretation of the ' affairs ' of cities under the provisions of article XII of the Constitution as it stood before its revision in 1923 (*People ex rel. Einsfeld* v. *Murray* [149 N. Y. 367]; *Admiral Realty Co.* v. *City of N. Y.* [206 id. 110]; *Matter of McAneny* v. *Board of Estimate & Apportionment of City of New York, supra*). They all point, however, to the holding that affairs, though concerns of a city, are subject, none the less, to regulation through the usual forms of legislation, if they are concerns also of the State. So far as legislative practice since the constitutional amendment is available for guidance, it points for the most part the same way."

In reference to the provision of section 4 of article 12, hereinabove quoted, the same justice said: " The reservation of this power is merely another way of saying that the Legislature is unfettered as to ' matters of State concern ' (City Home Rule Law, § 30)."

In *Robertson* v. *Zimmermann* (268 N. Y. 52) it was held that the primary purpose of the legislation there involved was to carry out an order of the State Commissioner of Health, designed to eliminate a menace to the health of the people of the State generally, and particularly communities, including the city of Buffalo; that while the act did, in the interest of the public generally, interfere with the control by the city of Buffalo of its sewage system and to that extent did relate to the property of the city, yet the act " cannot be held to be special or local either by its terms or effect." (268 N. Y. 52, at p. 60.)  Other cases are also there reviewed.

In *Gaynor* v. *Marohn* (268 N. Y. 417, 422) the act there involved created a light, heat, and power district in the county of Albany for the purpose of establishing light and power plants, whereby the inhabitants of the district might be furnished with light, heat and power " through publicly owned and operated utilities."  It was contended that this law transgressed the home-rule provision, in that it provided for the possible lighting of the city of Albany and other cities, but the court held that the act did not come within that provision of the Constitution and that it did not relate to the property, affairs or government of cities, as those words were there used.   (268 N. Y. 417, at p. 425.)

As hereinbefore stated, the petitioner refers specifically to eight or more provisions in chapter 879 which he claims violate the inhibition of section 2 of article 12 of the Constitution.   The permissible limits of this opinion preclude an exhaustive and detailed analysis of each of these particular features of the proposed new form of government.   Generally, these provisions relate to the creation of· a county board of assessors with power to assess property for State and county taxes; the creation of a county board of health; the creation of a department of public welfare with powers and duties in relation to the relief, care and support of the poor; the creation of the department of public works with prescribed powers and duties, including the power to provide for the lighting of all county highways and roads within and without the limits of any city or village; the limitation upon the granting of franchises for public utilities except by county ordinance, a power now possessed as alleged by cities; the creation of a county planning department with provisions relating to zoning; the creation of a county fire commission with prescribed powers, including that of preparing and presenting to the board of supervisors " comprehensive fire prevention ordinances." Other grounds of attack need not be here specifically noted.

In my opinion, the principles asserted in· the foregoing cases negative the tenability of petitioner's contention.   None of these provisions, in my opinion, relate exclusively to the " property,

affairs or government " of cities within the restricted significance of these words as used in the Home Rule Amendment. All these provisions, in a sense, may be wholly or partially " localized " in their direct and immediate application to the cities in Nassau county, but they relate also to State affairs, to matters of State concern, and were undoubtedly enacted primarily in the interest of the general public.

Moreover, under the authorities cited, chapter 879, in my opinion, is not a law special or local in its terms or effect, since it applies to any county within the scope of section 2601, and assuming, but not deciding, that at present Nassau county is the only county within the scope of that section, yet as said in the *Admiral Realty Co. Case* (206 N. Y. 110, at p. 139), with respect to the rapid transit act there involved, there is no presumption that chapter 879 will not apply to other counties in the future. The act is a general law and not private or local, since the provisions specifically attacked by petitioner are, in my opinion, matters also of State concern and relate also to State affairs.

Moreover, should the new form of government be adopted, a subsequent adjudication that any particular feature thereof was unconstitutional would not necessarily stamp the entire comprehensive scheme of government with illegality. In this State the tendency is to subdivide statutes, and whenever possible to reject the illegal and sustain the valid provisions thereof. (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48, at pp. 60, 62, 63.) In this case the court wrote: " Our right to destroy is bounded by the limits of necessity. Our duty is to save unless in saving we pervert."

That the Legislature was cognizant of this principle of statutory construction, and deemed it applicable to the act here involved, is evidenced by the express provisions of section 2606 thereof. (See, also, *People* v. *Mancuso*, 255 N. Y. 463, at p. 473.)

In view of this principle, in my opinion, speculation as to the possibility of a future adjudication as to the invalidity of any particular provision of the act should not prevent the contemplated referendum to the people of the entire act.

Motion denied.