Domenick L. Gabbielli, J.
The petitioners have instituted this proceeding pursuant to article 78 of the Civil Practice Act for an order “ (a) compelling the respondent, the State Civil Service *1060 Commission, to accept the Rules of the Municipal Civil Service Commission of the City of Rochester adopted by said Commission on the 5th day of April, 1962, and (b) further compelling the respondent, the State Civil Service Commission, to approve said Rules, if satisfactory, pursuant to Section 20 of the Civil Service Law of the State of New York, and (c) further compelling the Civil Service Commission of the County, of Monroe, to terminate its administration of the civil service in the City of Rochester and to turn over to the petitioners all the records pertaining to the civil service employees of the City of Rochester.”
Prior to February, 1961 both the City of Rochester and the County of Monroe had separate and distinct Civil Service Commissions. The civil service of the City of Rochester was administered pursuant to the provisions of the city charter.
The 1961 Legislature by enacting chapter 565 of the Laws of 1961 (eff. April 12, 1961), amended and enacted section 1008 of the Optional County Government Law which provides as follows:
“ Notwithstanding any inconsistent provisions of any general, special or local law, if the council or other legislative body in a city wholly within a county which has adopted plan ‘ B ’ authorizes the withdrawal of the city from its existing form of civil service administration and elects that the provisions of the civil service law shall be administered in such city under the jurisdiction of the civil service commission of the county, the effective date of such change of form of administration need not be delayed or postponed for any length of time after the date of such election, nor shall any such election be revoked except as provided by the civil service law in the event that such county thereafter elects to change its form of civil service administration.
1 ‘ If such city elects to withdraw from the jurisdiction of its civil service commission and adopt the county civil service administration, the membership of the county civil service commission shall, on the date on which such change of form of administration by the city becomes effective, be increased to five members, all of whom shall be appointed by the county manager, and not more than three of whom shall at the same time be adherents of the same political party. Of the members first appointed to the county civil service commission, upon the effective date of such change of civil service administration and increase in the commission’s membership, the county manager shall select the three civil service commissioners of the city in *1061 office at the time of the city’s withdrawal from the jurisdiction of its city civil service commission, and such appointees shall serve as county civil service commissioners until their terms of office as city civil service commissioners would have expired. The county manager shall also select two of the members of the county civil service commission in office at the time of such change of civil service administration and increase in the commission’s membership, who shall continue to serve for the balance of their terms. Thereafter, upon the expiration of the term of any such county civil service commissioner, the county manager shall appoint the successor to such office for a term of six years. If the office of any civil service commissioner provided for herein shall become vacant by death, resignation or otherwise, his successor shall be appointed by the county manager for the unexpired term. ’ ’
On December 12, 1961, the City Council of the City of Rochester, by Ordinance (No. 61-506), elected to withdraw the city’s civil service system from the administration of the City Civil Service Commission, pursuant to the provisions of section 1008 of the Optional County Government Law, and to adopt the administration of its civil service by the Monroe County Civil Service Commission. At the same time the City Council adopted Local Law No. 7 which abolished the City Civil Service Commission and transferred its members to the County Commission. This Ordinance and Local Law became effective December 15, 1961.
It further appears that the new City Council, on January 23, 1962, adopted and enacted Local Law No. 1 of 1962, effective January 29,1962, as well as Ordinance No. 62-18, which, in effect, provided for the appointment of a new City Civil Service Commission and purported to revoke the action taken by the City Council on December 12, 1961, in its election to have the city civil service administered by the County Civil Service Commission; and simultaneously adopted Ordinance No. 62-18, which purported to retransfer its administration to the recreated City Civil Service Commission.
Thereafter and on April 5, 1962, the newly-appointed City Civil Service Commission adopted proposed rules and regulations and, pursuant to the directions of section 20 of the Civil Service Law, transmitted copies thereof to the State Civil Service Commission for approval. The State Commission declined to accept the rules on the basis of the action previously taken, pursuant to section 1008 of the Optional County Government Law, and took the position that it had no authority nor *1062 jurisdiction to act upon the newly-adopted rules; and that there was no authority for the re-establishment of a municipal civil service commission.
The present proceeding was subsequently instituted for the affirmative relief requested.
It is the claim of the petitioners that section 1008 of the Optional County Government Law is unconstitutional in that it violates section 11 of article IX of the State Constitution which provides as follows: ‘ ‘ The legislature shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities, except upon the request of the mayor of the city affected concurred in by the local legislative body or upon the request of two-thirds of the elected members of the local legislative body declaring that a necessity exists and reciting the facts establishing such necessity and the concurrent action of two-thirds of the members of each house of the legislature. * * * The provisions of this article shall not be deemed to restrict the power of the legislature to enact laws relating to matters other than the property, affairs or government of cities.”
In connection with this particular charge of unconstitutionality, the petitioners claim that the section in question (Optional County Government Law, § 1008) was an act in relation to the “ property, affairs or government of a city” within the meaning of section 11 of article IX of the State Constitution and is, therefore, unlawful; and further in this connection, they aver that the section involved (§ 1008) does not apply alike to all cities within the meaning of the quoted section of the State Constitution ; and further that the request made by the Mayor of the City of Rochester, concurred in by the City Council, requesting the enactment of chapter 565 of the Laws of 1961 (§ 1008), did not comply with the requirements of section 11 of article IX of the State Constitution.
The petitioners make further claim that section 1008 is unconstitutional in that it violates the mandate and provisions of section 15 of article III of the Constitution which states: “ No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title ”.
In addition the petitioners point out, in any event, that if section 1008 is declared to be constitutional, the City Council possessed the right under the provisions of section 11 (subd. 1, par. [b]) of the City Home Rule Law, to supersede section 1008; to reinstate the Municipal Civil Service Commission; and to reinvest it with the power to administer the civil service of the *1063 City of Rochester. This section (City Home Rule Law, § 11, snbd. 1, par. [b]) insofar as it applies here, provides:
“ Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend * * * (b) local laws in relation to the qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees * * * whether or not * * * such local laws relate to the property, affairs or government of such city * * * [Such local laws] may change or supersede any provision of an act of the legislature theretofore enacted which provision does not in terms and effect apply alike to all cities. The enumeration of powers in this subdivision is not intended to imply that any of such powers is not included within the power of a city to adopt and amend local laws in relation to its property, affairs and government ”.
On the other hand, the respondents claim that chapter 565 of the Laws of 1961 (§ 1008) is not violative of the State Constitution ; that it is not an act in relation to the 1 (property, affairs or government ” of any city within the prohibited meaning of the Constitution; that civil service is a matter of State concern and that the section in question is not a special law; that no home rule message was required and, in any event, the Mayor’s letter of necessity was adequate and proper and is not up for review; and that section 1008 does not violate the home rule provisions •of the Constitution or the City Home Rule Law. In addition the respondent Monroe County Civil Service Commission also claims that the petitioners are without legal capacity to institute these proceedings.
In considering the merits of the contentions here, we shall first direct our attention to the claimed unconstitutionality of section 1008. It is clear that section 11 of article IX of the Constitution does not prohibit the enactment of laws which do not relate to the property, affairs or government of cities. What do the words “property, affairs or government of cities” actually mean 1
It has long been the rule that these words as used in these statutory provisions, have a far more restricted and limited significance than attaches to their use colloquially or in common ■speech. (Matter of Burke v. Krug, 161 Misc. 687.)
The Court of Appeals in Adler v. Deegan (251 N. Y. 467, 473) has said that these words since 1894 ‘1 have become words of art ” and were so used in the home rule amendment, then known as article XII of the Constitution (now art. IX). In concurring opinions by Judge Poüítd and Chief Judge Cardozo, the court further stated that while there was no controlling authority *1064 specifying with legal exactness the restricted and limited significance of these words, the cases do disclose that certain specified legislation is not included within their meaning. Thus, a law in form and terms may relate apparently only to a single city, or to a limited number of cities, yet if the law was adopted for the purpose of generally conserving the interest, health, and welfare of the public at large, it will not be deemed to be legislation relating to “ property, affairs or government ” of the particular city or cities or to come within the limited significance given to these words. So matters “ localized in their application to a single city ” have been held to be included within the scope of the words “ State affairs ”. (Matter of Burke v. Krug, supra, p. 693.)
Most significantly, Chief Judge Cabdozo in his concurring opinion in Adler v. Deegan (supra, pp. 489-490) further stated that ‘ ‘ The question to be faced is this, has the State surrendered the power to enact local laws by the usual forms of legislation where subjects of State concern are directly and substantially involved, though intermingled with these, and perhaps identical with them, are concerns proper to the city? So far as judicial precedents in the courts of New York are available for guidance, they deal with the interpretation of the ‘ affairs ’ of cities under the provisions of article XII [now art. .IX] of the Constitution as it stood before its revision in 1923 (People ex rel. Einsfeld v. Murray [149 N. Y. 367]; Admiral Realty Co. v. City of N. Y. [206 N. Y. 110]; Matter of McAneny v. Bd. of Estimate [232 N. Y. 377]). They all point, however, to the holding that affairs though concerns of a city, are subject, none the less, to regulation through the usual forms of legislation, if they are concerns also of the State. So far as legislative practice since the constitutional amendment is available for guidance, it points for the most part the same way.” (Italics mine.)
A statute regulating the activities of brokers of theatre tickets, though applicable only to the City of New York at the time, was held not to be in contravention of the home rule provisions of the Constitution because the subject was, in a substantial degree, a matter of State concern, though intermingled with it were matters of local concern. (Kelly-Sullivan v. Moss, 174 Misc. 1098, citing and quoting Chief Judge Cabdozo in Adler v. Deegan, supra).
Unquestionably, civil service affects people in each community and locality in the State. Section 6 of article V of the State Constitution provides that civil service extends throughout the State and all civil divisions thereof, including cities and villages, by the following language:
*1065 “ Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness * * *. Laws shall be enacted to provide for the enforcement of this section. ’ ’
The State Civil Service Department was created by section 2 of article V of the State Constitution; and pursuant to the authority and dictates of these provisions, various sections of the State Civil Service Law have been enacted, which administer the mandate of the Constitution; and all of which provisions make up a general, State-wide, and uniform system within which “ [appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages ”, are made.
Any enactment in this regard, having to do with the agency or subdivision that will adopt a certain form of administration as well as when any change will become effective, deals primarily with a matter of State concern. Of necessity, it is logical that the civil service system and its administration is a matter of paramount State concern rather than a matter of purely local concern.
These provisions, in a sense, may be wholly or partially “ localized ” in their direct and immediate application to the municipality involved, but they relate also to State affairs, to matters of State concern, and were undoubtedly enacted primarily in the interest of the general public. In addition, chapter 565 of the Laws of 1961, in my opinion, is not a law special or local in its terms or effect, since it applies to any county, and assuming, but not deciding that Monroe County is presently the only county within the scope of the questioned section, we cannot assume that it will not apply to other counties in the future.
In Admiral Realty Co. v. City of New York (206 N. Y. 110) the court in a very similar situation present here and involving the Rapid Transit Act, said (p. 139): “ The act is general in its terms as applicable to cities of a certain size, and in that respect, subject to the consideration of another constitutional provision, is valid, and not a case of local legislation”. The court had also stated (p. 139): “I think, however, that the statute does not come within any constitutional prohibitions of the character urged. While it is true that if we should go outside the statute we should ascertain that at the present time it affects only the city of New York * * * and there is no conclusive presumption that it will not apply to other cities in the future.”
*1066 Having concluded that section 1008 does not relate to the “ property, affairs or government of any city ” within the meaning of the above constitutional provisions; and that the subject matter of the section relates to matters of State concern, it is my opinion that the Legislature was free to act without a city message. (See Whalen v. Wagner, 2 Misc 2d 89, affd. 3 A D 2d 936, affd. 4 N Y 2d 575; Adler v. Deegan, 251 N. Y. 467, supra.) In writing for an unanimous court, Judge Yaw Yoobhis, in affirming Whalen v. Wagner {supra, pp. 582, 583) said: ‘1 Although city messages are recited as having been submitted to the Legislature in chapters 806 and 809 (against which plaintiffs’ attack is in the main addressed), it is not necessary to decide whether such messages were, in fact, made in compliance with the Home Buie amendments to the State Constitution, or whether the recitals of these city messages in the statute preclude further inquiry concerning them. The decisive question is whether the Home Buie amendment applies at all to any of chapters 806-809 of the Laws of 1955 * * * the matters over which the Port Authority has jurisdiction are of State concern, and, therefore, not within the Home Buie amendment.”
Quite apart from the foregoing, however, it is my further opinion that the claim made by the petitioners that since the city message was improper and inadequate the legislation was invalid, is also without force. The petitioners admit and allege by paragraph ‘ ‘ 9 ” of the petition that there was adopted and sent a city message of necessity and a request for the enactment of the bills in the Legislature which finally became chapter 565 of the Laws of 1961 (§ 1008). No one denies that a message was transmitted and Exhibit “ H ” attached to the petition certifies that the bill was passed after receipt of the message. This being so, section 40 of the Legislative Law is controlling, wherein it states that: “ Upon the passage by either house of the legislature of a bill * * *' In addition, if any such bill has been passed on a message required by the constitution, that fact also shall be stated * * *. No bills shall be deemed to have so passed unless certified in the manner provided by this section, which certificate to such effect shall he conclusive evidence thereof ’ ’. (Italics mine.)
In any event, the attack made upon this legislation by the petitioners, as it relates to the adequacy of the city message, fails by reason of the mandate (and prohibition) of section 23 of the Uity Home Buie Law providing for the method of transmitting messages and their content. This section concludes by saying: ‘1 The validity of an act passed by the legislature in accordance with such a request shall not be subject to review *1067 by the courts on the ground that the necessity alleged in the request did not exist or was not properly established by the facts recited.”
Nothing could be more clear and definitive.
Finally, the petitioners further claim that, in the event chapter 565 of the Laws of 1961 (§ 1008) shall be declared constitutional, the city had the right, (1) pursuant to section 11 (subd. 1, par. [b]) of the City Home Rule Law, to reinstate the City Civil Service Commission, (2) to revoke the election for a change of form of civil service administration, and (3) to reinvest the City Civil Service Commission with the power of administration over the civil service of the City of Rochester.
Insofar as it is applicable here, section 11 (subd. 1, par. [b]) of the City Home Rule Law, states as follows: “ 1. Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend * * * (b) local laws in relation to the qualifications, number, mode of selection and removal, terms of office and compensation of all its officers and employees * * *. [Such local laws] may change or supersede any provision of an act of the legislature theretofore enacted which provision does not in terms and effect apply alike to all cities.”
It will be readily observed that this section has particular reference to the compensation, employment, number, terms of office, and qualifications et cetera of officers and employees. This section cannot give rise to the right to supersede section 1008. The questioned section does not restrict local legislation on the matters set forth in section 11 (subd. 1, par. [b]) of the City Home Rule Law. It does not abridge any of the enumerated rights nor does it affect its operation.
In affirming Whalen v. Wagner (4 N Y 2d 575, supra) the Court of Appeals decided a similar question as it relates to the so-called Home Rule Amendment. In that case, Judge Yax Yoobhis, quoted the opinion of Chief Judge Cabdozo wherein he summarized the standard of judgment governing whether the Home Rule Amendment applies, saying: “The test is rather this, that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality. Measured by that test, this statute must prevail. I do not say that an affair must be one of city concern exclusively to bring it within the scope of the powers conferred upon the municipality by section 3 of the Home Rule article and section-11 of the City Home Rule Law in cases where the State has not undertaken to occupy the field. I assume that if the affair is partly State and partly local, the city is free *1068 to act until the State has intervened. As to concerns of this class there is thus concurrent jurisdiction for each in default of action by the other. The power of the city is subordinate at such times to the power of the State, but may be exerted without restraint to the extent that the two can work in harmony together.” (Italics mine.)
The questioned statute, as herein pointed out, deals with a matter of State concern and, therefore, we do not need to now pass upon this latest claim of the petitioners.
This court concludes that the action of the city in electing to have its civil service administered by the County Civil Service Commission, and the action of the Legislature in enacting-chapter 565 of the Laws of 1961 were both valid and properly taken. Section 1008 of the Optional County Government Law is constitutional.
Various grounds and objections have been urged by the respondent, the Monroe County Civil Service Commission, in its claim that the petitioners have no legal capacity to institute these proceedings. This issue becomes academic by reason of this court’s declaration that section 1008 of the Optional County Government Law is valid and constitutional.
An order may be submitted dismissing the petition.