OPINION OF THE COURT
Denise L. Sher, J.
Plaintiff/petitioner moves, pursuant to CPLR article 78 and 3001, 6311 and 6313, for (1) an order granting a writ of prohibition permanently enjoining defendants/respondents County of Nassau (County) and George Maragos as Comptroller of the County of Nassau (Maragos) from proceeding with an audit of the Town of North Hempstead’s Clinton G. Mark Park District; (2) an order pursuant to CPLR 2304 quashing defendant/ respondent Maragos’ subpoena duces tecum served on plaintiff/ petitioner Town of North Hempstead (Town) on May 2, 2011; and (3) a judgment declaring that defendants/respondents County and Maragos lack jurisdiction to audit, inter alia, plaintiff/petitioner Town and that section 402 (6) of the Nassau County Charter is unconstitutional to the extent that it authorizes the County and/or its Comptroller to audit, inter alia, plaintiff/petitioner Town. Defendants/respondents oppose the application.
After months of what proved to be a futile attempt to conduct an audit, defendant/respondent Maragos served a subpoena duces tecum on plaintiff/petitioner Town pursuant to sections 402 (6) and 2213 of the Nassau County Charter on May 2, 2011, seeking the production of, inter alia, Clinton G. Mark Park District’s (Park District) Charter and/or bylaws, its board minutes from 2009 to present and its financial records to enable an audit of said Park District. Plaintiff/petitioner Town promptly commenced this hybrid action challenging the constitutionality of the Nassau County Charter insofar as it permits defendant/respondent Maragos to audit plaintiff/ *811 petitioner Town and its departments. Both permanent injunctive relief and declaratory relief are sought. A temporary restraining order enjoining defendants/respondents County and Maragos’ audit of plaintiff/petitioner Town was granted on May 6, 2011.
Plaintiff/petitioner Town is a “municipal corporation” of the State (see Town Law § 2; Matter of Town of Montauk, Inc. v Pataki, 40 AD3d 772 [2d Dept 2007]), and a “political subdivision” of the State pursuant to General Municipal Law § 100 (1). (See Matter of Ames v Smoot, 98 AD2d 216 [2d Dept 1983].) Defendant/respondent County is also a “municipal corporation” of the State (County Law § 3) and a “political subdivision” of the State pursuant to Municipal Law § 100 (1). Both plaintiff/ petitioner Town and defendant/respondent County are formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as “may be conferred or imposed upon [them] by law.” (See Town Law § 2; County Law § 3 [emphasis added].)
Pursuant to article V, § 1 of the New York State Constitution, via the enactment of General Municipal Law §§33 and 34, the State Legislature has authorized the State Comptroller to supervise the accounts and financial affairs of this State’s municipal corporations. General Municipal Law § 33 (1) authorizes the State Comptroller to “cause the accounts of all officers of each . . . municipal corporation, industrial development agency, district, agency and activity to be inspected and examined by one or more examiners of municipal affairs for such periods as the comptroller shall deem necessary.” General Municipal Law § 34 authorizes the State Comptroller and each examiner of municipal affairs “to examine into the financial affairs of every . . . municipal corporation, industrial development agency, district, fire company as defined in section two hundred four-a of this chapter, agency and activity.”
Section 402 (6) of the Nassau County Charter which was also enacted by the State Legislature authorizes the County Comptroller to
“examine and audit of his own motion or when directed to" do so by resolution of the County Legislature, the accounts and records of any town or special district and make reports from time to time when requested by the County Executive or County Legislature on the financial condition of the county or any or all of its political subdivisions.”
*812 Plaintiff/petitioner Town maintains that the County Charter is limited to enabling the County Comptroller to audit only political subdivisions of the County and since plaintiff/petitioner Town is a political subdivision of the State and the Park District is an administrative department of plaintiff/petitioner Town, defendant/respondent County Comptroller lacks authority to audit it. Plaintiff/petitioner Town maintains that the County Charter is unconstitutional insofar as it can be read to permit the County Comptroller to audit political subdivisions of the State.
Plaintiff/petitioner Town relies on Matter of Inwood Fire Dist. (152 Misc 2d 518 [Sup Ct, Nassau County 1991]), in which the court held that the County Comptroller lacked the authority to audit fire departments. In that case, the court noted that “[election 402 (6) of the Nassau County Charter authorize[d] the County Comptroller to examine and audit the accounts and records of any town or special district, and make reports on the financial condition of the county or any or all of its political subdivisions” and that “[s]ection 405 mandates that each special district within the county file an annual audit, prepared by a certified public accountant, with the County Comptroller.” (Id. at 523.) The court further noted (at 523) that section 1502 of the County Charter defines special districts as “water, sewer, drainage, and garbage collection and disposal, which may be created or expanded by authority of the county” and did not include fire districts, which are political divisions of the State and district corporations. (See id. at 518-519; Town Law § 174 [7]; General Corporation Law § 3.) In addition, the court held that “[t]he authority of the county to conduct audits is . . . limited to the examination of the financial affairs of political subdivisions of the county, and does not extend to political subdivisions of the State.” (See Matter of Inwood Fire Dist. at 523.) It held,
“While the county has the authority to audit political subdivisions of the county, and those special districts which it may establish or extend, the county is without jurisdiction to audit political subdivisions of the State, the creation and extension of which is within the sole and exclusive authority of the State Comptroller.” (Id.)
The court’s decision in Matter of Inwood Fire Dist. (supra) is readily distinguishable. The fire district was found to be a district corporation, not a town nor a special district which the *813 County Comptroller is authorized to audit by the County Charter. (See General Construction Law § 66.) Therefore, the court interpreted the County Comptroller’s auditing jurisdiction bestowed on it by the County Charter as not including it.
The Park District is not a district corporation.
Furthermore, it is questionable whether Matter of Inwood Fire Dist. (supra) was correctly decided. Section 402 (6) of the County Charter does not refer to section 1502 of the County Charter. Section 102 (16) of the Real Property Tax Law defines “special district” as
“a town or county improvement district, district corporation or other district established for the purpose of carrying on, performing or financing one or more improvements or services intended to benefit the health, welfare, safety or convenience of the inhabitants of such district or to benefit the real property within such district, and in which real property is subject to special ad valorem levies or special assessments for the purposes for which such district was established” (emphasis added).
This definition includes the fire district in Inwood.
Furthermore, the exclusion of parks in section 1502 of the County Charter’s definition of “special districts” does not preclude defendant/respondent County Comptroller’s auditing of parks as a “special district.” The “special districts” discussed in section 1502 governs the creations and extensions of the special districts enumerated therein by a town. It requires the town clerk to submit a certified copy of a petition to create or extend only water, sewer, drainage or garbage and refuse collection and disposal districts to the Clerk of the County Board of Supervisors. The County Board of Supervisors must then determine by resolution whether the creation or extension of the proposed district conforms with a comprehensive or general plan therefor adopted by the County and is in the best interests of the County’s inhabitants. Should either of those determinations be negative, the County Board of Supervisors must enact a resolution disapproving of the creation or extension of the district by a town. Thus, section 1502 of the County Charter governs a town’s creation and extension of only a limited number of special districts and the court’s limitation, in Matter of Inwood Fire Dist. (supra), of the County Comptroller’s authority to audit only those special districts enumerated in section 1502 of the County Charter was erroneous.
*814 Whether the Park District is an administrative department of plaintiff/petitioner Town or a special district, defendant/ respondent County Comptroller has authority to audit it.
A petition seeking article 78 relief in the nature of prohibition should be granted upon a showing that a “body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction.” (CPLR 7803 [2].)
“[A] petitioner seeking a writ of prohibition must demonstrate that: (1) a body or officer is acting in a judicial or quasi-judicial capacity, (2) that body or officer is proceeding or threatening to proceed in excess of its jurisdiction and (3) petitioner has a clear legal right to the relief requested.” (Matter of Sedore v Epsterin, 56 AD3d 60, 63 [2008]; Matter of Town of Huntington v New York State Div. of Human Rights, 82 NY2d 783 [1993]; see also Matter of Holtzman v Goldman, 71 NY2d 564 [1988].)
The statute relied on by defendant/respondent Maragos in his issuance of the subpoena duces tecum, section 402 (6) of the Nassau County Charter, was enacted by the New York State Legislature in 1936. (See L 1936, ch 879; see also Mahler v Gulotta, 297 AD2d 712 [2d Dept 2002], lv denied 98 NY2d 615 [2002]; Matter of Torre v County of Nassau, 86 NY2d 421 [1995]; Korn u Gulotta, 72 NY2d 363 [1988]; Matter of Burke v Krug, 161 Misc 687 [Sup Ct, Nassau County 1936].) Accordingly, the applicability of the Home Rule Law is questionable. (See Mahler v Gulotta at 713, citing Municipal Home Rule Law § 33 [1]; Torre v County of Nassau, supra; Korn v Gulotta, supra; Burke v Krug, supra.) Assuming, arguendo, that the Municipal Home Rule Law applies, the County Charter’s delegation of authority to the County Comptroller to audit towns and special districts remains valid.
Neither the New York State Constitution, the General Municipal Law nor any other statute applicable here specifically bar any local governmental entity from exercising concurrent auditing powers (like those sought to be exercised here) with the State Comptroller.
Municipal Home Rule Law § 10 (1) (ii) (a) (11), (12) gives a county, city, town or village the power to adopt and amend local laws not inconsistent with the constitution or any general law relating to “the protection and enhancement of its physical and visual environment” and for the “government, protection, order, conduct, safety, health and well-being of persons or prop-
*815 erty therein.” (See DJL Rest. Corp. v City of New York, 96 NY2d 91 [2001].) In keeping with article IX, § 2 (c) (ii) of the New York State Constitution, Municipal Home Rule Law § 10 (1) (ii) prohibits those municipalities “from adopting local laws inconsistent with the State Constitution or any general law of the State.” (DJL Rest. Corp. v City of New York at 94.) “Broadly speaking, State preemption occurs in one of two ways — first, when a local government adopts a law that directly conflicts with a State statute and second, when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility.” (DJL Rest. Corp. v City of New York at 95 [citation-omitted], citing Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99 [1983], and New York State Club Assn. v City of New York, 69 NY2d 211 [1987].) “The State Legislature may expressly articulate its intent to occupy a field, but it need not. It may also do so by implication.” (DJL Rest. Corp. v City of New York at 95 [footnote omitted].) “An implied intent to preempt may be found in a ‘declaration of State policy by the State Legislature ... or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area.’ ” (DJL Rest. Corp. v City of New York at 95, quoting Consolidated Edison Co. of N.Y. v Town of Red Hook at 105; Robin v Incorporated Vil. of Hempstead, 30 NY2d 347 [1972].) “In that event, a local government is ‘precluded from legislating on the same subject matter unless it has received “clear and explicit” authority to the contrary.’ ” (DJL Rest. Corp. v City of New York at 95, quoting People v DeJesus, 54 NY2d 465, 468 [1981], quoting Robin v Incorporated Vil. of Hempstead at 351.)
“More specifically, ‘a local law regulating the same subject matter is deemed inconsistent with the State’s overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe ... or (2) imposes additional restrictions on rights granted by State law.’ ” (DJL Rest. Corp. v City of New York at 95, quoting Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97 [1987].)
Municipal Home Rule Law § 11 (1) (g) precludes legislative bodies which are statutorily defined as
“[t]he board of supervisors, board of aldermen, common council, council, commission, town board, board of trustees or other elective governing board or body *816 now or hereafter vested by state statute, charter or other law with jurisdiction to initiate and adopt local laws or ordinances, whether or not such local laws or ordinances require the approval of the elective chief executive officer or other official or body to become effective” (see Municipal Home Rule Law § 2 [7]) from adopting a local law which supersedes a State statute if such local law “[a]pplies to or affects powers of the State Comptroller in relation to auditing or examining municipal accounts or prescribing forms of municipal accounting or in relation to approval or disapproval of establishment or extension of fire districts or special districts.” (Municipal Home Rule Law § 11 [1] [g].)
In a letter dated April 18, 2005, Alan Lebowitz, General Counsel to the New York State Comptroller, opined that the Nassau County Comptroller had the authority to audit Nassau County Sanitary District No. 6. He reasoned that “there is nothing in section 402 or any other provision of the County Charter that in any way diminishes, impairs or encroaches on the express statutory authority of the State Comptroller to conduct examinations of special districts” and that
“the grant of authority in article 3 (of the General Municipal Law) is independent of, and in no way affected by, the provisions of the County Charter (see e.g. Matter of McCall v Barrios-Paoli, 93 NY2d 99, 688 NYS2d 107 (1999), holding that the audit authority of the New York City Comptroller as set forth in the City Charter did not diminish the State Comptroller’s audit authority under the General Municipal Law; see also Matter of Investigation of Inwood Fire Dist. by Comptroller of Nassau County, supra).”
Accordingly, he noted that “the State Comptroller had audit jurisdiction in many instances where a local comptroller also shares that authority.”
This court agrees. Nothing in the State Constitution or General Municipal Law §§ 33 or 34 is indicative of any intent on the part of the State Legislature to limit auditing of municipal corporations, political subdivisions or special districts exclusively to the State Comptroller, nor does permitting concurrent auditing powers conflict with or impede upon the authority of the State Comptroller in any way. Finally, interpreting section 402 (6) of the Nassau County Charter, the court finds that the fact *817 that the County Comptroller may “make reports from time to time when requested by the County Executive or County Legislature on the financial condition of the county or any or all of its political subdivisions” does not limit the authority otherwise bestowed on him to “examine and audit of his own motion or when directed to do so by resolution of the County Legislature, the accounts and records of any town or special district” (emphasis added).
Plaintiff/petitioner Town’s reliance on Patterson v Carey (41 NY2d 714 [1977]) sand Matter of New York Pub. Interest Research Group v New York State Thruway Auth. (77 NY2d 86 [1990]) is misplaced. In those cases, unlike here, the challenged legislation presented an impediment to the State Comptroller’s exercise of his discretionary authority. Plaintiff/petitioner Town also relies on the Court of Appeals holding in Matter of New York Pub. Interest Research Group v New York State Thruway Auth. (at 89, quoting Patterson v Carey at 723) that
“NY Constitution, article V, § 1 addresses the Comptroller’s constitutional jurisdiction with regard to the State and its political subdivisions and deems him the ‘independent auditing official for the affairs of the State.’ The Legislature is empowered to define the Comptroller’s ‘powers and duties’ in respect to the State and its political subdivisions and to assign the Comptroller the supervision of accounts of political subdivisions.” (Citation omitted.)
That holding, however, does not preclude the Legislature from delegating or local municipal corporations from exercising concurrent auditing powers. Nor is the State Comptroller’s exercise of his jurisdiction to audit approximately 252 towns since 2005 contrary to concurrent auditing authorities.
In the interests of judicial economy, defendants/respondents County and Maragos’ affirmation in opposition shall be deemed their answer. (CPLR 405, 2001; see RDK Med. P.C. v General Assur. Co., 8 Misc 3d 1025[A], 2005 NY Slip Op 51281[U] [Civ Ct, Kings County 2005].)
This court does not find the information sought by the defendants/respondents County and Maragos’ subpoena duces tecum to be overly broad or unduly burdensome.
Plaintiff/petitioner Town is directed to comply with the subpoena duces tecum within 14 days of service of a copy of this order.
*818 Accordingly, the petition is denied and the proceeding dismissed.